IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM HARRIS,                        )
                                       )    Civil Action No. 05-279
                    Plaintiff,         )
                                       )    District Judge Terrence F.
                                       )    McVerry/
          v.                           )    Magistrate Judge Lisa Pupo
                                       )    Lenihan
Dr. MICHAEL JOSEPH HERBIK, ROBERT      )
TRETNIK, R.N, CHCA, NEAL MECHLING,     )    Re:  Doc. Nos. 63 & 66
Superintendent, CAROL SCIRE,           )
Superintendent Assistant, DARLENE      )
LINDERMAN, Mailroom Supervisor,        )
CHARLES MARTIN, Security               )
Lieutenant, and LINDA D. HARRIS,       )
Deputy Superintendent,                 )
                                       )
                    Defendants.        )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.      RECOMMENDATION**

It is respectfully recommended that the Defendants' Motions for
Summary Judgement (doc. nos. 63 and 66) be granted.

**II.     REPORT**

William Harris, a Pennsylvania Prisoner previously incarcerated
at the State Correctional Institution at Fayette, Pennsylvania, commenced
this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.
Named as Defendants are the following: Michael Joseph Herbik D.O., M.D.;
Neal K. Mechling, Superintendent; Robert Tretnik, Health Care
Administrator; Carol Scire, Superintendent Assistant; Charles Martin,
Security Lieutenant; Darlene Linderman, Mailroom Supervisor; and Linda
D. Harris, Deputy Superintendent. Plaintiff alleges violations of the
First, Eighth and Fourteenth Amendments of the United States

Constitution.  For the reasons set forth below, the Motions for Summary
Judgment should be granted.

## A. Standard of Review

Defendants have filed motions for summary judgment pursuant to
Fed. Rule Civ. Proc. 56 (doc. nos. 63 and 66).  Summary judgment is
appropriate if, drawing all inferences in favor of the non-moving party,
". . . the pleadings, depositions, answers to interrogatories and
admissions on file, together with the affidavits, if any, show that there
is no genuine issue of material fact and the movant is entitled to
judgment as a matter of law."  Fed. Rule Civ. Proc. 56(c).  Summary
judgment may be granted against a party who fails to adduce facts
sufficient to establish the existence of any element essential to that
party's case, and for which that party will bear the burden of proof at
trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986) (party can
move for summary judgment by "pointing out to the district court that
there is an absence of evidence to support the non-moving party's
case.").  The moving party bears the initial burden of identifying
evidence that demonstrates the absence of a genuine issue of material
fact.  Once that burden has been met, the non-moving party must set forth
". . . specific facts showing that there is a <u>genuine issue for trial</u> .
. ." or the factual record will be taken as presented by the moving party
and judgment will be entered as a matter of law.  <u>Matsushita Elec. Ind.
Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).  An issue is genuine only
if the evidence is such that a reasonable jury could return a verdict for

the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The inquiry, then, involves determining " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52).  If a court concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50.

## B. Material Facts

On January 8, 2004, Harris was transferred to SCI-Fayette.  His Inter-Institutional Transfer Reception Screening sheet listed arthritis and vertigo as chronic conditions for which he was receiving Meclizine and Indocin; knee supports, elbow supports and orthopedic shoes were listed as his physical aids (doc. no. 69-2).  On January 9, 2004, Dr. Herbik prescribed Antivert (the brand name of Meclizine) and Indocin, each for a six month period for Plaintiff at the same dosages that he had been receiving (doc. no. 69-4, p.17).  Plaintiff claims that Dr. Herbik changed Harris' medication for his vertigo condition without examining him, which caused him to suffer an episode of vertigo as well as nausea, vomiting, headaches and staggering gait (doc. no. 13, p.2).  Plaintiff filed Grievance No. 74332 wherein he complained about the change of medication (doc. no. 65-3, p.43).  Plaintiff received a response denying his grievance and appealed to the Superintendent (doc. no. 65-3, p.41).

He did not file a final appeal to Central Office.

On January 28, 2004, Dr. Herbik gave Harris a physical examination wherein he gave Plaintiff a rectal examination (doc. no. 69-5, p. 15). Plaintiff claims that Dr. Herbik told him that a rectal examination was mandatory under DOC procedure (doc. no. 65-2, p.5). Although an inmate has the right to refuse medical treatment, Plaintiff claims he reluctantly submitted to the examination for fear of a misconduct. Dr. Herbik claims that a rectal examination is part of the physical process and that an inmate has a right to refuse it (doc. no. 65-2, p. 17).

On March 4, 2004, Plaintiff wrote a letter to Lt. Epstein of the Pennsylvania State Police (PSP) alleging that Dr. Herbik sexually abused him (doc. no. 65-2, p.5). By letter dated March 10, 2004, Captain Roger Waters informed Plaintiff that the Commonwealth of Pennsylvania Department of Corrections Office of Professional Responsibility (OPR) would be in charge of investigating his complaint regarding Dr. Herbik (doc. no. 65-2, p.4). The OPR interviewed and took statements from several witnesses, including Harris, Dr. Herbik, Nurse Bilohlavek, and Health Care Administrator Tretnik (doc. no. 65-2, p.14). According to the Report, Plaintiff admitted that no staff member had threatened him with a disciplinary action if he did not receive the exam (doc. no. 65-2, p. 15). The OPR concluded that Dr. Herbik acted appropriately and professionally in accordance with DOC procedures. It further concluded that there was sufficient evidence that Plaintiff was well aware that he

4

could have refused medical treatment because it was documented that he had refused other medical treatments at least twelve times (doc. no. 69-10, p. 42) as far back as 1996 (doc. no. 65-2, p. 16). Plaintiff filed Grievance no. 76057 complaining about the rectal examination which he appealed through all three levels of DOC review (doc. no. 65-2, pp. 8-12).

On January 29, 2004, Dr. Herbik ordered x-rays of Harris' knees due to his complaints of knee pain. The x-ray report, which was dated February 4, 2004, was normal (doc. no. 69-6). Harris refused to enter the exam room on February 12, 2004 to discuss the x-ray report with Dr. Herbik and told him he no longer wanted to see him about his knee problems (doc. no. 65-4, p. 32).

On March 11, 2004, Plaintiff sent another letter to the PSP claiming that DOC officials tampered with his mail by confiscating his previous letter to the PSP (doc. no. 65-3, p. 7). Further, Plaintiff alleges that Lt. Martin violated his constitutional rights by failing to give him a copy of the March 10, 2004 letter from the PSP to Plaintiff that Lt. Martin, as Intelligence Officer, was copied with by the PSP (doc. no. 65-2, p. 4). Plaintiff filed two grievances concerning this matter, both of which were appealed through all three levels (doc. no. 65-2, pp. 24-29, Grievance No. 80094) (doc. no. 65-3, pp. 16-22, Grievance No. 76057). In its report, the OPR concluded that there was no mail tampering because his letter dated March 4, 2004 to the PSP was postmarked March 5, 2004 and the PSP responded back to Plaintiff by

letter dated March 10, 2004 (doc. no. 65-2, p. 16).

On May 10, 2004, Plaintiff filed Grievance No. 83834 against Defendants Herbik and Tretnik alleging the denial of previously prescribed knee braces (doc. no. 65-3, p. 29). Plaintiff received a response dated May 10, 2004 informing him that there was no objective clinical justification for knee braces (doc. no. 65-3). Plaintiff submitted an Inmate's Request to Staff Member to Superintendent Wilson dated September 24, 2004 inquiring about his appeal. Defendant Scire responded to the request: "don't go there it is <u>way</u> beyond the five working days" (doc. no. 65-3, p.26) (emphasis in original). Plaintiff filed another Grievance No. 97922 complaining that Defendant Scire was denying his due process rights by interfering with his ability to appeal his grievances (doc. no. 65-3, pp. 31-33).

Harris attended sick call on October 21, 2004 complaining of knee instability and inability to do his prison job because of knee problems. Plaintiff denied that the x-rays taken in February of 2004 were his. He refused to be seen by Dr. Herbik. Plaintiff was observed to have good balance and steadiness in rising from his chair and maintained good balance ambulating out of the room (doc. no. 65-4, p. 33). On March 15, 2005, Harris requested to be examined by an orthopedic specialist for a knee brace. He was advised to bring his orthopedic soles to his next visit for evaluation (doc. no. 69-7, p. 110. On April 11, 2005, Plaintiff was evaluated with his soles and the physician's assistant determined that there was no imminent need for orthopedic

soles.  *Id.*

On May 11, 2005, Plaintiff was seen on sick call for alleged knee deformity and pain.  Upon examination, it was noted that Plaintiff's right knee was tender to palpitation and there was a bony build up on the lateral aspect attributable to long term arthritis.  Harris was referred to the orthopedics clinic and another x-ray of his knees was ordered. *Id.*  On May 13, 2005 x-rays were taken which revealed "no significant osseous or soft tissue abnormality" but noted mild degenerative joint disease (doc. no. 69-8).

On May 26, 2005, and June 10, 2005, Plaintiff signed up for sick call demanding to see an orthopedic specialist and to get knee braces and his soles replaced (doc. no. 69-7, p.9).  During both examinations, his x-rays were reviewed and it was determined that no medical intervention was needed.  *Id.*

### C. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege:  1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  <u>West v. Atkins</u>, 487 U.S. 42 (1988);  <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a sec-

tion 1983 action, that defendant must have _personal_ involvement in the alleged wrongs; liability cannot be predicated solely on the operation of _respondeat superior_. <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988); <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. <u>Rode</u>, 845 F.2d at 1207.

The issues at bar concern whether Defendants have violated any of Plaintiff's constitutional rights. His claims are discussed separately below.

### D. The First Amendment

Several of the Plaintiff's allegations invoke the protections of the First Amendment, which provides as follows.

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I.

### 1. <u>Access to Courts</u>

Plaintiff makes several allegations that Defendants violated his right to access to the courts by their alleged mishandling of his mail. In <u>Christopher v. Harbury</u>, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining

whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. <u>Christopher</u>, 536 U.S. at 415.

The Court explained that the first requirement mandated that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently. <u>Christopher</u>, 536 U.S. at 417. In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than hope." *Id*. The second requirement requires a Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation. Third, a Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. *Id*. at 414.

It is clear from reviewing Plaintiff's Complaint that he has failed to allege a viable claim for denial of access to the courts. The record shows that all of Plaintiff's letters to the PSP were received and acted upon. Thus, Plaintiff can not identify any court action that was

affected.  Consequently, the Commonwealth Defendants' Motion for Summary Judgment should be granted as to this claim.

## 2. Free Speech

Next, Plaintiff asserts that Defendants have interfered with his free speech rights by tampering with his mail.  Inmates have a qualified liberty interest in uncensored communications that is protected by the First Amendment.  Procunier v. Martinez, 416 U.S. 396, 418 (1974), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  This means that the decision to restrict access to protected communications must be accompanied by minimal procedural safeguards, which include notice, an opportunity to be heard, and an opportunity for appeal to a prison official who was not involved in the original censorship decision.  Procunier, 416 U.S. at 418-19.

Here, there is no evidence of any violation of Plaintiff's right to free speech.  In this regard, Plaintiff claims that his March 4, 2004 letter to the PSP was confiscated by DOC personnel.  The record evidence shows that Plaintiff's March 4, 2004 letter to the PSP was not confiscated because it was post-marked March 5, 2004 and responded to by the PSP by letter dated March 10, 2004.  Thus, there is no evidence upon which a reasonable juror could conclude that it was confiscated.[1]

---

[1]  Plaintiff further alleges that Defendants reviewed and xeroxed his letters to the PSP before they were mailed out.  Such allegation, even if true, does not support a violation of his constitutional rights.  DC-ADM 803 provides that incoming and outgoing correspondence, other than privileged correspondence, may be opened and inspected if there is reason to believe that the security of the facility may be impaired or this directive is

10

Similarly, there is no plausible evidence that any Defendant interfered with his incoming or outgoing mail such as would violate his free speech rights. Plaintiff claims that Lt. Martin tampered with his incoming mail by confiscating the March 10, 2004 letter from the PSP. The March 10, 2004 letter informed Plaintiff that the PSP were turning the matter over to the OPR for investigation. The PSP copied this letter to the Intelligence Officer at SCI-Fayette who at the time was Lt. Martin (doc. no. 65-2, p. 4). Lt. Martin showed Plaintiff his copy of the letter and Plaintiff accused him of confiscating his incoming mail. Lt. Martin told Plaintiff he was copied on the letter and that if Plaintiff did not receive the letter from the PSP, he should write to them for a copy. Lt. Martin did not violate Plaintiff's free speech rights by failing to provide Plaintiff with a copy. Plaintiff received two similar letters from the PSP dated March 24, 2004 (doc. no. 65-3, p. 5) and April 22, 2004 (doc. no. 65-3, p. 12). There simply is no credible evidence that DOC officials were tampering with Plaintiff's mail. Consequently, they are entitled to summary judgment as to this claim.

## E. The Eighth Amendment

The complaint alleges Eighth Amendment claims against Dr. Herbik for changing his vertigo medication without ever examining Plaintiff, denying him previously prescribed orthopedic devices and coercing Plaintiff into undergoing a digital rectal exam that was

---

being violated.   DC-ADM 803, VI. Procedures, A. Mail Privileges, at ¶ 7 (doc. no. 65-2, p. 38).

unnecessary and done for the purpose of sexual assault.  The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments."  U.S. Const. Amend. VIII.  This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement.  In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)).

Not every injury raises constitutional concerns.  A prison official violates the Eighth Amendment only when two requirements are met.  The inmate must show that:  1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk.  *Id.*, 511 U.S. at 834.  The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious."  *Id*.  In determining whether a prisoner has alleged a risk that is  objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. <u>Helling v. McKinney</u>, 509 U.S. 25, 35 (1993).  The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind.

The Supreme Court clarified this deliberate indifference standard in <u>Farmer</u> as follows.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

<u>Farmer</u>, 511 U.S. at 837-838 (emphasis added).

## 1. <u>Medical Treatment</u>

To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. <u>Gamble v. Estelle</u>, 439 U.S. 897 (1978).

The first showing requires the court to <u>objectively</u> determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person

would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second prong requires a court <u>subjectively</u> to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

A plaintiff alleging constitutionally inadequate medical treatment must submit medical evidence of a "serious medical need" sufficient to satisfy the objective component of the test. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004); Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir. 1987), *cert. denied*, 485 U.S. 991 (1988). In Boring, the Court of Appeals for the Third Circuit determined that, because plaintiffs failed to produce expert testimony that their injuries were "serious," they failed to meet their burden of proof. The court explained that expert testimony would not necessarily be required in situations where the seriousness of injury or illness would be apparent to a lay person, *e.g.*, a gunshot wound. Boring, 833 F. 2d at 473 (citing City of Revere v. Massachusetts General Hosp., 463 U.S. 239 (1983)).

With respect to an ulnar nerve injury and migraine headaches, however, the Court concluded that a fact finder would not be able to determine that the condition was "serious" because the need for treatment did not appear to be "acute." *Id*. With respect to a scalp condition and complaints about dental care, the Court found that the complaints merely reflected a disagreement over the proper method of treatment. In so concluding, the Court noted that "courts will not 'second-guess the propriety or adequacy of a particular course of treatment [which] remains a question of sound professional judgment.'" *Id*. (quoting <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979)). Finally, with respect to a prior knee injury, the Court found that the evidence did not establish an acute condition.

> As laymen, the jury would not be in a position to decide whether any of the conditions described by plaintiffs could be classified as "serious." In these circumstances, the district court properly required expert medical opinion and in its absence properly withdrew the issue from the jury.

<u>Boring</u>, 833 F.2d at 474 (citations omitted).

Here, Plaintiff has not included any evidence to substantiate the existence of any serious medical need. With respect to his vertigo medication, the record evidence shows that upon his transfer to SCI-Fayette, he was given the same medication in the same dosage. With respect to his request for orthopedic soles and a knee brace, Plaintiff received two x-rays of his knees: the first was within normal limits and the second showed mild degeneration. These were reviewed by various

15

medical personnel who concluded that Plaintiff's condition did not justify his requests. As with the medical complaints in <u>Boring</u>, a lay person would not be able to conclude from Plaintiff's allegations about his vertigo and joint problems that he suffered from a "serious medical need" sufficient to invoke the <u>Gamble</u> standard without expert testimony or evidence. Because evidence of this nature is required in order for an inmate's claim to succeed, Plaintiff's failure to meet this burden is fatal to his case. <u>Ford v. Mercer County Correctional Facility</u>, 171 Fed. Appx. 416, 421 (3d Cir. 2006) (affirming summary judgment where inmate failed to present expert evidence of causation); <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 504 (3d Cir. 2002) (holding that the inmate was required to present expert testimony to support Eighth Amendment claim of alleged deterioration of heart condition or immune system).[2]

Moreover, even if the court were to conclude that Plaintiff's allegations demonstrated the existence of a serious medical need, he has

---

[2] *Accord* <u>Sherrer v. Stephens</u>, 50 F.3d 496, 497 (8th Cir. 1995) (inmate failed to submit sufficient evidence that defendants ignored an acute or escalating situation or that delays adversely affected his prognosis, given the type of injury in this case); <u>Beyerbach v. Sears</u>, 49 F.3d 1324 (8th Cir. 1995) (inmate failed to present any verifying medical evidence to establish the objective component of his claim); <u>Hill v. Dekalb Regional Youth Detention Ctr.</u>, 40 F.3d 1176, 1188 (11th Cir. 1994) (an inmate complaining that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to succeed); <u>Lopez v. Robinson</u>, 914 F.2d 486, 490 (4th Cir. 1990) (to objectively determine whether a "serious deprivation" of a basic human need has occurred (*i.e.*, whether prison conditions to rise to the level of unconstitutional punishment), there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition).

failed to demonstrate that Defendants acted with deliberate indifference. The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." *Id*. Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

The Supreme Court explained the difference between negligence and constitutional claims in Estelle v. Gamble, 429 U.S. 97, 104 (1978). In that case, the prisoner, Gamble, was injured when a bale of cotton fell on him while he was unloading a truck. He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell. He returned to the hospital where he was given pain pills by an inmate nurse and then was examined by a doctor. The following day, his

17

injury was diagnosed as a lower back strain; he was prescribed a pain reliever and a muscle relaxant. Over the course of several weeks, Gamble was seen by several doctors who prescribed various pain relievers and provided him with medical work excuses. Ultimately, despite his protests that his back hurt as much as it had the first day, medical staff certified Gamble to be capable of light work. During the next two months, Gamble received a urinalysis, blood test, blood pressure measurement, and pain and blood pressure medication. Subsequently, a medical assistant examined Gamble and ordered him hospitalized for treatment of irregular cardiac rhythm.

The Supreme Court held that Gamble's allegations failed to state a claim upon which relief could be granted against the defendant, both in his capacity as a treating physician and as the medical director of the Corrections Department.

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period . . .. They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury." The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." <u>But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic</u>

> example of a matter for medical judgment. A medical
> decision not to order an X-ray, or like measures,
> does not represent cruel and unusual punishment. At
> most it is medical malpractice, and as such the
> proper forum is the state court under the Texas Tort
> Claims Act.

Gamble, 427 U.S. at 107 (internal citations omitted) (emphasis added).

Like the prisoner in Gamble, Plaintiff at bar has failed to demonstrate that he suffered a constitutional violation, a prerequisite for recovery under 42 U.S.C. § 1983. Plaintiff's medical records indicate that he received substantial medical treatment for his complaints. He received x-rays of his knees on two occasions and was referred to the orthopedics clinic for examination. While an intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere.[3] A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation

---

3  See, e.g., Dias v. Vose, 960 F.2d 143 (1st Cir. 1991); United States v. DeCologero, 821 F.2d 39, 42 (1st Cir. 1987) ("though it is plain that an inmate deserves adequate medical care, he cannot insist that his institutional host provide him with the most sophisticated care money can buy"); Ferranti v. Moran, 618 F.2d 888, 891 (1st Cir. 1980) (a dispute over the exercise of professional medical judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation); Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981) (where the dispute is over the adequacy of the medical treatment, federal courts should be reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law).

because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981). Mere disagreements over medical judgment do not state Eighth Amendment claims as there are typically several acceptable ways to treat an illness. White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted). *Accord* Young v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state claim for relief under section 1983).

To survive Defendants' motions for summary judgment, Plaintiff is required to point to some evidence to show that Defendants knew or were aware of a substantial risk of serious harm to Plaintiff. Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 192 n.2 (3d Cir. 2001)). Specifically, there is no record evidence that suggests that any Defendant knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it or that he had any reason to know that he faced any substantial harm. Moreover, Plaintiff has failed to demonstrate that he suffered any harm as a result of Defendants' actions. Thus, Defendants are entitled to summary judgment as to Plaintiff's claims alleging inadequate medical treatment. *See* Brandner v. First Correctional Medical, 167 Fed. Appx. 328, 2006 WL 358512 (3d Cir. 2006) (holding that medical treatment consisting of MRI of knee yielding normal results did not evidence deliberate indifference); Banuelos v. McFarland, 41 F.3d 232

20

(5th Cir. 1995) (a disagreement between an inmate and his physician concerning whether certain medical care was appropriate is actionable under section 1983 only under exceptional circumstances); <u>Monmouth</u>, 834 F.2d at 346 (deliberate indifference may be shown only where prison officials have actual knowledge of the need for treatment, yet intentionally refuse to provide any appropriate care).

## 2. <u>Sexual Assault</u>

Plaintiff further claims that Dr. Herbik sexually assaulted him by performing a rectal examination. Sexual harassment of an inmate by a prison guard or official can rise to the level of an Eighth Amendment violation. <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1310 (10 Cir. 1998); <u>Boddie v. Schnieder</u>, 105 F.3d 857 (2d Cir. 1997). Severe or repetitive sexual abuse of an inmate by a prison officer can be objectively, sufficiently serious enough to constitute an Eighth Amendment violation. Where no legitimate law enforcement or penological purpose can be inferred from defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." <u>Boddie</u>, 105 F.3d at 861 (internal citations omitted). However, allegations of isolated incidents of sexual comments or non-consensual touching may not be "objectively, sufficiently serious" to show harm of federal constitutional proportions. *Id*.

Here, Dr. Herbik was performing a medical examination. Plaintiff does not allege that he performed it in a sadistically cruel manner. While Plaintiff claims he consented under duress, during OPR's

investigation, Plaintiff admitted that Dr. Herbik did not threaten him if he failed to have the examination. Several courts have held conducting a rectal examination during an initial screening does not amount to sexual abuse. <u>Johnson v. Rush</u>, 2007 WL 2845003, *3 (M. D. Pa. September 26, 2007) (holding that Defendant's conduct, when considered in the context of a medical rectal examination, was insufficient to state a federal constitutional claim of sexual abuse); <u>Soles v. McGee</u>, 2007 WL 2868097, *3-4 (D.N.J. Sept. 26, ,2007); <u>Neal v. Swigert</u>, 2005 WL 1629779, *2 (S. D. Ohio July 6, 2005). Consequently, Dr. Herbik is entitled to summary judgment as to this claim.

### F. Fourteenth Amendment

Plaintiff also claims that Defendants violated his rights as protected by the Fourteenth Amendment, which prohibits the state from depriving an individual of a constitutionally protected interest without due process of law. To state a claim for relief, a plaintiff must set forth facts that demonstrate that he had a protected liberty interest that was impaired by the defendants actions. <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983); <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972).

It is well established that inmate grievance procedures, in themselves, do not confer a liberty interest protected by the Due Process Clause. <u>McGuire v. Forr</u>, 1996 WL 131130 (E. D. Pa. Mar. 21, 1996), <u>aff'd</u> 101 F.3d 691 (3d Cir.1996); <u>Leavitt v. Allen</u>, 46 F.3d 1114 (Table), 1995 WL 44530 (1st Cir. Feb. 3, 1995). Furthermore, prison regulations which establish a grievance procedure cannot give rise to a liberty interest

22

because they confer only procedural protections, not substantive rights, upon the inmates who may use the grievance procedures. *See* <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir. 1996); <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994); <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir.), *cert. denied*, 488 U.S. 898 (1988); <u>Wilson v. Horn</u>, 971 F. Supp. 943, 947-48 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998). Accordingly, Plaintiff's allegations that Defendants failed to properly investigate, process, and/or consider his grievances do not state a claim upon which relief may be granted under 42 U.S.C. § 1983. <u>Rhoades v. Adams</u>, 194 Fed. Appx. 93, 95 (3d Cir. Sept. 6, 2006).

## III.    <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully recommended that the Defendants' Motions for Summary Judgement (doc. nos. 63 and 66) be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Dated:     November 21, 2007          Lisa Pupo Lenihan

United States Magistrate Judge


cc:      The Honorable Nora Barry Fischer
         United States District Judge

         WILLIAM HARRIS, CX-7039
         SCI Somerset
         1600 Walters Mill Rd.
         Somerset, PA 15510

         Counsel of Record